# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 07-3430

———————

Larry Streu,                                        *
                                                    *
            Appellant,                              *
                                                    *   Appeal from the United States
      v.                                            *   District Court for the
                                                    *   Western District of Missouri.
Dave Dormire,                                       *
                                                    *
            Appellee.                               *

———————

Submitted:  October 14, 2008
    Filed:  February 26, 2009

———————

Before COLLOTON, BOWMAN, and BENTON, Circuit Judges.

———————

COLLOTON, Circuit Judge.

      Larry Streu appeals the district court's dismissal of his petition for writ of
habeas corpus as untimely.  Reviewing the dismissal *de novo*, *see Boston v. Weber*,
525 F.3d 622, 624 (8th Cir. 2008), we reverse and remand for further proceedings.

      Under the federal Antiterrorism and Effective Death Penalty Act of 1996
("AEDPA"), a state prisoner has one year from the date on which his judgment of
conviction becomes final to seek federal habeas corpus relief.  28 U.S.C.
§ 2244(d)(1)(A).  This one-year statute of limitations is tolled, however, during the
time in which "a properly filed application for State post-conviction or other collateral

review with respect to the pertinent judgment . . . is pending." *Id.* § 2244(d)(2). The main questions presented in this appeal are whether a motion to reopen state post-conviction proceedings in Missouri is an "application for State post-conviction or other collateral review" within the meaning of the tolling provision, and if so, whether the application is "pending" after the time for appealing a denial of the motion to reopen has expired, but before the prisoner files a motion for leave to file an untimely appeal that is later granted.

I.

In 2000, Streu was convicted in Missouri circuit court of first-degree murder and sentenced to life in prison without parole. The Missouri Court of Appeals affirmed the judgment on September 25, 2001, and denied Streu's motion for rehearing on October 30, 2001. *Streu v. State*, 59 S.W.3d 39, 39 (Mo. Ct. App. 2001). Because Streu did not seek transfer of his case to the Supreme Court of Missouri, the judgment became final, and AEDPA's one-year statute of limitations began to run, when the court of appeals issued its mandate on November 21, 2001. *See* 28 U.S.C. § 2244(d)(1)(A); *Riddle v. Kemna*, 523 F.3d 850, 856 (8th Cir. 2008) (en banc).

On February 4, 2002, Streu filed a timely motion for post-conviction relief under Missouri Supreme Court Rule 29.15, alleging ineffective assistance of trial counsel. By that date, AEDPA's statute of limitations had run for 75 days. *See Painter v. Iowa*, 247 F.3d 1255, 1256 (8th Cir. 2001) ("[T]he time between the date that direct review of a conviction is completed and the date that an application for state post-conviction relief is filed counts against the one-year period."). The circuit court denied Streu's Rule 29.15 motion, and the court of appeals issued its mandate affirming the denial on May 26, 2005. *See Streu v. State*, 161 S.W.3d 382 (Mo. Ct. App. 2005). The parties do not dispute that Streu's Rule 29.15 motion was "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment," or that the one-year period was tolled during the

time the motion was pending in Missouri court. Thus, on May 26, 2005, when the court of appeals issued its mandate, the statute of limitations still had run for 75 days.

The statute of limitations ran for an additional 109 days, bringing the total to 184, by the time Streu filed a motion to reopen state post-conviction proceedings on September 12, 2005. The motion to reopen, which alleged abandonment by post-conviction counsel, was denied by the circuit court on September 27, 2005. Streu claims that he was not notified of the court's order of denial, and was therefore not aware of the deadline for filing a notice of appeal. The time for filing a notice of appeal expired on November 7, 2005. *See* Mo. Sup. Ct. R. 44.01(a), 81.04(a), 81.05(a).

Eventually realizing what had happened, Streu filed a motion for leave to file a notice of appeal out of time on March 3, 2006 – 116 days after the original deadline had passed. On March 14, 2006, Streu's motion for leave was granted, and on March 31, 2006, he properly filed a notice of appeal. The Missouri Court of Appeals subsequently affirmed the denial of Streu's motion to reopen post-conviction proceedings, issuing its mandate on January 24, 2007. *See Streu v. State*, 209 S.W.3d 556 (Mo. Ct. App. 2007). On April 17, 2007 – 83 days later – Streu filed an application for federal habeas relief by placing it in a prison mailbox. *See Nichols v. Bowersox*, 172 F.3d 1068, 1077 (8th Cir. 1999) (en banc) ("[A] *pro se* prisoner's petition for a writ of habeas corpus is filed on the date it is delivered to prison authorities for mailing to the clerk of the court."), *overruled on other grounds by Riddle*, 523 F.3d 850.

The district court dismissed Streu's habeas petition as barred by AEDPA's one-year statute of limitations. Had the district court counted only the 184 untolled days before Streu filed his motion to reopen and the 83 untolled days after the denial of that motion became final, Streu's petition would have been timely. The district court, however, also counted the 499 days between Streu's filing of the motion to reopen on

September 12, 2005, and the court of appeals' issuance of its mandate affirming the denial of that motion on January 24, 2007. We granted Streu a certificate of appealability on the question "whether the statute of limitations was tolled during the pendency of Streu's motion to reopen his post-conviction proceedings." Because there is no dispute that Streu's motion to reopen was "properly filed," the answer turns on whether the motion was an "application for State post-conviction or other collateral review with respect to the pertinent judgment." 28 U.S.C. § 2244(d)(2).

## II.

### A.

The State maintains that Streu's motion to reopen was not an "application for State post-conviction or other collateral review" with respect to Streu's conviction. According to the State, an application is one "for State post-conviction or other collateral review" only if it requests relief from the underlying conviction or sentence. Streu's motion to reopen, the State points out, requested only new proceedings in light of Streu's alleged abandonment by counsel during the initial round of post-conviction review. Even a successful motion to reopen, the State notes, would not have set aside Streu's conviction.

Adoption of the State's position would serve one of the purposes behind AEDPA's statute of limitations: "reduc[ing] the potential for delay on the road to finality." *Duncan v. Walker*, 533 U.S. 167, 179 (2001); *see also Pace v. Diguglielmo*, 544 U.S. 408, 413 (2005) (expressing concern about "turn[ing] § 2244(d)(2) into a *de facto* extension mechanism, quite contrary to the purpose of AEDPA, and open[ing] the door to abusive delay"). If the one-year period continues to run while motions to reopen are pending, then state prisoners would lack an incentive to file such motions "as a delay tactic," just "so they receive additional time to file their habeas petitions." *Lawrence v. Florida*, 127 S. Ct. 1079, 1085 (2007). Consistent with reducing the

potential for delay, some circuits take the view that the statute is not tolled by motions requesting the reopening of state post-conviction proceedings. One circuit has stated that motions for rehearing or reconsideration following the conclusion of state post-conviction review have "no bearing on AEDPA's one-year statute of limitations," *Jones v. Hulick*, 449 F.3d 784, 789 (7th Cir. 2006) (internal quotation omitted), while another has expressed doubt that motions for reargument qualify as "application[s] for State post-conviction or other collateral review." *Bethea v. Girdich*, 293 F.3d 577, 579 (2d Cir. 2002).

Streu, on the other hand, argues that his motion to reopen was an "application for State post-conviction or other collateral review," because its filing was part of a broader effort to have his conviction set aside. Prevailing on the motion to reopen was not an end in itself, Streu contends, but rather a means to attacking his conviction. He argues, moreover, that in claiming abandonment by post-conviction counsel, he presented grounds for relief from his conviction. His motion to reopen alleged, for example, that his post-conviction counsel should have challenged his conviction by raising certain claims of ineffective assistance of trial counsel.

Streu's view that his motion to reopen tolled the statute of limitations finds support in considerations of comity. AEDPA's tolling provision was meant to "encourage petitioners to seek relief from state courts in the first instance," *Rhines v. Weber*, 544 U.S. 269, 276 (2005), thereby giving "an opportunity to the state courts to correct a constitutional violation." *Id.* at 274 (internal quotations omitted). If Missouri courts have decided to entertain motions to reopen post-conviction proceedings despite the effect on the finality of their own judgments, *see Taylor v. State*, 254 S.W.3d 856, 858 (Mo. 2008); *State ex rel. Nixon v. Jaynes*, 63 S.W.3d 210, 217-18 (Mo. 2001), then federal courts arguably should respect that decision by tolling the statute of limitations while such motions are pending. After all, "it is the State's interests that the tolling provision seeks to protect." *Carey v. Saffold*, 536 U.S. 214, 223 (2002). Consistent with this view, one circuit has held that a motion for

rehearing following the conclusion of post-conviction proceedings is an "application for State post-conviction or other collateral review," *Nix v. Sec'y for the Dep't of Corr.*, 393 F.3d 1235, 1237 (11th Cir. 2004) (per curiam), and others have assumed that a similar motion is an "application." *See, e.g.*, *Kindler v. Horn*, 542 F.3d 70, 76-78 (3d Cir. 2008) (motion for reargument); *Lookingbill v. Cockrell*, 293 F.3d 256, 261 (5th Cir. 2002) (motion for reconsideration).

Although neither of these competing views is implausible, we do not start with a blank slate. Our court's decision in *Bishop v. Dormire*, 526 F.3d 382 (8th Cir. 2008), dictates that Streu's motion to reopen state post-conviction proceedings was an "application for State post-conviction or other collateral review." In *Bishop*, a panel of this court addressed whether AEDPA's statute of limitations was tolled by a motion to recall a mandate of the Missouri Court of Appeals affirming the denial of post-conviction relief. The panel noted that "[t]he plain language of § 2244(d)(2) . . . requires that an application for state post-conviction or other collateral review be 'properly filed' and be 'with respect to the pertinent judgment or claim' in order for the time during which it is pending to be tolled." *Id.* at 384. Because the State conceded that Bishop's motion to recall the mandate was "properly filed," the court limited its discussion to whether the motion satisfied the "with respect to" requirement. *Id.* Concluding that it did, the court explained that "Bishop's motion was filed 'with respect to' his state habeas petition inasmuch as he sought to have the appeal reopened based on his post-conviction appellate counsel's failure to raise certain issues on appeal, all of which attacked the validity of his state conviction."[1]

_____

[1] AEDPA's tolling provision requires that an application be "with respect to *the pertinent judgment or claim*," 28 U.S.C. § 2244(d)(2) (emphasis added), not "'with respect to' [a] state habeas petition," as the panel in *Bishop* put it. *Bishop*, 526 F.3d at 384. But given the court's explanation that Bishop's motion rested on "his post-conviction appellate counsel's failure to raise certain issues on appeal, all of which attacked the validity of *his state conviction*," *id.* (emphasis added), we infer that the panel must have meant that Bishop's motion related to the judgment of conviction, as required by § 2244(d)(2).

*Id.* The court held, therefore, that AEDPA's one-year limitations period was tolled during the time in which Bishop's motion to recall the mandate was pending. *Id.*

The holding in *Bishop* was based on the conclusions that Bishop's motion was both "properly filed" and "with respect to the pertinent judgment." The court did not address expressly whether the motion was an "application for State post-conviction or other collateral review." In holding that the motion tolled the statute of limitations, the *Bishop* panel *implied* that the motion was such an "application," but we are generally not bound by a prior panel's implicit resolution of an issue that was neither raised by the parties nor discussed by the panel. *United States v. Quiroga*, No. 07-3093, 2009 WL 291049, at \*3 n.2 (8th Cir. Feb. 9, 2009); *Passmore v. Astrue*, 533 F.3d 658, 660 (8th Cir. 2008); *see also United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) (stating that a prior decision's implicit resolution of an issue that was neither "raised in briefs or argument nor discussed in the opinion of the Court" is not binding precedent). In *Bishop*, however, the issue of whether the motion to recall was an "application for State post-conviction or other collateral review" was the central focus of the State's brief on appeal. The State argued that the motion was not "for State post-conviction or other collateral review," because the motion was not necessary to exhaust state remedies. Appellee's Br. at 13, *Bishop*, 526 F.3d 382 (No. 07-2341). This argument was rejected by the *Bishop* panel in its discussion of whether the motion was "with respect to the pertinent judgment." *Bishop*, 526 F.3d at 384. It appears, then, that the *Bishop* panel treated what might have been two distinct questions – whether the motion was an "application for State post-conviction or other collateral review" and whether it was "with respect to the pertinent judgment" – as a single inquiry. Because the State argued directly that the motion to recall was not an "application for State post-conviction or other collateral review," and the panel considered and rejected this argument in its decision, we conclude that *Bishop* resolved the issue.

In light of *Bishop*, we hold that Streu's motion to reopen post-conviction proceedings was an "application for State post-conviction or other collateral review." For purposes of AEDPA's tolling provision, Streu's motion to reopen post-conviction proceedings and Bishop's motion to recall a mandate affirming the denial of post-conviction relief are indistinguishable. Both motions alleged that post-conviction counsel failed to raise certain claims attacking the prisoner's judgment of conviction. Neither motion would have set aside the judgment of conviction. But the granting of Streu's motion would have led to new post-conviction proceedings in the circuit court, just as the granting of Bishop's motion would have led to new post-conviction proceedings in the court of appeals, and both were designed to further the ultimate goal of gaining collateral relief from the judgment of conviction. Given their analogous content and purpose, if Bishop's motion to recall is an "application for State post-conviction or other collateral review," then Streu's motion to reopen must be an "application" as well.

We further hold, in light of *Bishop*, that Streu's motion to reopen was "with respect to the pertinent judgment." As in *Bishop*, the "pertinent judgment" here is the prisoner's state conviction. And like the motion in *Bishop*, the motion here sought to reopen state post-conviction proceedings based on post-conviction counsel's "failure to raise certain issues . . . , all of which attacked the validity of [the] state conviction." *Bishop*, 526 F.3d at 384. Accordingly, Streu's motion satisfied the "with respect to" requirement of AEDPA's tolling provision.

Based on the foregoing, we conclude that Streu's motion to reopen state post-conviction proceedings was "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment." As such, it tolled AEDPA's statute of limitations during the time it was "pending."

B.

Our next task is to determine precisely when the motion to reopen was pending. In *Carey v. Saffold*, the Supreme Court addressed the meaning of "pending" as used in AEDPA. The Court noted that "[t]he dictionary defines 'pending' (when used as an adjective) as 'in continuance' or 'not yet decided.' It similarly defines the term (when used as a preposition) as 'through the period of continuance . . . of,' 'until the . . . completion of.'" *Saffold*, 536 U.S. at 219 (citation omitted) (quoting *Webster's Third New International Dictionary* 1669 (1993)). Applying those definitions, the Court concluded that "until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains 'pending.'" *Id.* at 220. The Court thus held that an application is "pending" during the time between a lower court's adverse decision and the timely filing of a notice of appeal. *Id.* at 217, 225.

In *Williams v. Bruton*, 299 F.3d 981 (8th Cir. 2002), applying *Saffold*, we held that an application for state post-conviction or other collateral review remains "pending" during the time in which a prisoner may appeal a denial of the application, even if the prisoner does not appeal. *Id.* at 983. We explained that an application does not achieve "final resolution" until the time for appeal expires, because until then, the possibility remains that the application will be considered by the appellate court. *Id.* Based on *Williams*, we conclude that Streu's motion to reopen was "pending" between September 12, 2005, the date on which he filed the motion in the circuit court, and November 7, 2005, the date on which the time for filing a notice of appeal from the circuit court's denial of the motion expired. Although the circuit court denied Streu's motion on September 27, 2005, the motion remained "pending" until the time for appeal expired.

By similar logic, we conclude that Streu's motion to reopen was "pending" between March 14, 2006, the date on which his motion for leave to file an untimely appeal was granted, and January 24, 2007, the date on which the court of appeals

issued its mandate affirming the denial of Streu's motion to reopen. Although Streu did not file a notice of appeal until March 31, 2006, the motion to reopen became "pending" again on March 14, 2006, when the time for appeal was renewed. At that point, there was again the possibility, discussed in *Williams*, 299 F.3d at 983, that the motion to reopen would be considered by the appellate court. Moreover, we held in *Peterson v. Gammon*, 200 F.3d 1202 (8th Cir. 2000), that the time during which an application is "pending" includes "the entire period during which a notice of appeal . . . would be timely" before the actual filing of such a notice. *Id.* at 1205. Here, a notice of appeal would have been timely beginning on March 14, 2006. From that date, therefore, Streu's motion to reopen was "pending," and it remained so until January 24, 2007, when the denial of Streu's motion became final by issuance of the mandate. *See Payne v. Kemna*, 441 F.3d 570, 572 (8th Cir. 2006).

Between November 7, 2005, and March 3, 2006, however, Streu's motion to reopen was not "pending." On November 7, 2005, the deadline for filing a notice of appeal passed without any action by Streu. At that point, there was nothing "in continuance" or "not yet decided." *Saffold*, 536 U.S. at 219 (internal quotations omitted). The post-conviction proceedings had reached a resolution, and Streu had yet to file his motion for leave to file an untimely appeal. Although Streu later sought leave to pursue an appeal out of time on March 3, 2006, nothing was "pending" before a Missouri court between November 7, 2005, and March 3, 2006. We thus agree with the conclusion of several other courts that an application is not "pending" between the expiration of the time for appeal and the filing of a petition for belated appeal. *See McMillan v. Sec'y for the Dep't of Corr.*, 257 F. App'x 249, 252 (11th Cir. 2007) (per curiam); *Allen v. Mitchell*, 276 F.3d 183, 186 (4th Cir. 2001); *Melancon v. Kaylo*, 259 F.3d 401, 407 (5th Cir. 2001); *Gibson v. Klinger*, 232 F.3d 799, 807 (10th Cir. 2000); *Fernandez v. Sternes*, 227 F.3d 977, 979 (7th Cir. 2000).[2]

---

[2]In *Jimenez v. Quarterman*, 129 S. Ct. 681 (2009), the Supreme Court held that where a defendant fails to file a timely appeal of his state conviction but later obtains the right to file an out-of-time appeal, his conviction becomes "final" for purposes of

Because we conclude that an application is not "pending" after the time for appeal has expired, but before a motion for leave to proceed out of time has been filed, AEDPA's limitations period was not tolled in Streu's case during the 116 days between November 7, 2005, and March 3, 2006. Adding those 116 days to the 184 untolled days before Streu filed his motion to reopen and the 83 untolled days after the denial of that motion became final yields 383 untolled days before Streu filed his petition for federal habeas relief. Streu's federal habeas petition was therefore untimely under AEDPA's one-year statute of limitations, regardless of whether the statute was tolled during the 11-day period between the filing of the motion for leave to file an untimely appeal on March 3, 2006, and the granting of that motion on March 14, 2006 – an issue we need not resolve.

## C.

The remaining question is whether Streu is entitled to equitable tolling. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some

28 U.S.C. § 2244(d)(1)(A) at the conclusion of his out-of-time appeal or the expiration of time for seeking review of that appeal. *Id.* at 685-86. Streu asserts in a post-argument submission that *Jimenez* "strongly suggests" that once a motion for leave to file an untimely appeal is granted, an "application for State post-conviction or other collateral review" should be deemed "pending" from the time the motion for leave was filed until the belated appeal is resolved. We do not think *Jimenez* signals this conclusion. When a *conviction* becomes "final" for purposes of § 2244(d)(1)(A) is distinct from when an *application* for post-conviction review is "pending" for purposes of § 2244(d)(2). *Jimenez* itself suggests that lack of finality does not necessarily imply pendency. In discussing the state court's reopening of direct review, the Court noted that the order granting leave to file an out-of-time appeal "*restored the pendency* of the direct appeal." *Id.* at 686 (emphasis added) (internal quotation and brackets omitted). The implication is that the appeal was not "pending" during the period after the time for appeal had expired, but before leave to file an appeal out of time was granted.

extraordinary circumstance stood in his way." *Riddle v. Kemna*, 523 F.3d 850, 857 (8th Cir. 2008) (en banc) (internal quotation omitted).

At the time Streu filed his federal habeas petition, the law of this circuit provided that AEDPA's statute of limitations did not begin to run in a Missouri case until 90 days after a defendant's conviction was affirmed on direct appeal by the Missouri Court of Appeals, even if the defendant did not seek discretionary review by the Supreme Court of Missouri. *See Nichols v. Bowersox*, 172 F.3d 1068, 1072 (8th Cir. 1999) (en banc). The rule was based on the view that a defendant was entitled to 90 days to petition the Supreme Court of the United States for a writ of certiorari, and that time for seeking direct review did not expire until that period elapsed. *Id*.; *see* 28 U.S.C. § 2244(d)(1)(A). In *Riddle*, however, we overruled *Nichols*, concluding that the Supreme Court would not have jurisdiction to grant a petition for writ of certiorari to the state court of appeals, and that the time for seeking direct review does not include a 90-day period for seeking certiorari from the court of appeals. 523 F.3d at 853-55. Rather, in the case of a Missouri defendant who does not seek transfer to the Supreme Court of Missouri, the conclusion of direct review occurs when time expires for the defendant to file for state discretionary review, or when the state court of appeals issues its mandate, whichever is later. *Id.* at 856.

Streu did not seek discretionary review by the Supreme Court of Missouri on direct appeal, and his petition for writ of habeas corpus was untimely under the rule of *Riddle*. Under *Nichols*, however, his petition would have been timely, because the statute of limitations would have begun running 90 days after the court of appeals denied rehearing, on January 28, 2002, rather than on November 21, 2001, when the court of appeals issued its mandate. The extra 68 days would have made Streu's federal habeas petition timely, even assuming the one-year period was not tolled between March 3, 2006, and March 14, 2006. Because *Riddle*'s overruling of en banc precedent qualifies as an "extraordinary circumstance, external to [Streu] and not attributable to him," 523 F.3d at 857, Streu satisfies the second element of equitable

-12-

tolling. Streu must still satisfy the first element, however, by establishing "diligence in pursuing his habeas petition." *Id.* Because this element depends on the facts of the case, we remand to the district court to determine whether Streu "has been pursuing his rights diligently but was lulled into inaction," *id.* at 858, such that AEDPA's statute of limitations should be equitably tolled, and Streu's habeas petition should be considered timely.

\* \* \*

The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

_____